

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X
EFFRAT MASSRE, individually and on behalf  :
of all others similarly situated,          :
                                           :
                         Plaintiff,        :        **REPORT AND RECOMMENDATION**
                                           :
            - against -                    :        19 Civ. 4654 (KAM) (VMS)
                                           :
MULLOOLY, JEFFREY, ROONEY                   :
& FLYNN LLP,                               :
                                           :
                         Defendant.        :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

**Vera M. Scanlon, United States Magistrate Judge:**

Plaintiff Efrat Massre brought this class action on behalf of herself and other similarly situated New York consumers, alleging that Defendant Mullooly, Jeffrey, Rooney & Flynn LLP violated the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692, et seq., by sending Plaintiff an initial debt collection letter containing confusing and misleading language that overshadowed the validation notice.

Before this Court, on referral from the Honorable Kiyo A. Matsumoto, is a joint motion seeking an Order: (1) conditionally certifying the proposed class for settlement purposes; (2) preliminarily approving the proposed Class Settlement Agreement; (3) appointing Class Counsel; (4) appointing Plaintiff as representative of the Settlement Class; (5) directing notice to the Class; and (5) setting dates for opt-outs, objections and a hearing for final approval.

For the reasons set for below, this Court respectfully recommends that the Parties' joint motion be granted as follows:

- The Class be conditionally certified for settlement purposes;
- The Settlement Agreement be preliminarily approved;
- Ari Marcus, Esq. and Yitzchak Zelman, Esq. of Marcus & Zelman, LLC, be appointed as Class Counsel;

1

- Plaintiff Efrat Massre be appointed as the representative of the settlement Class;
- The proposed notice, in the form as amended by this Court and attached hereto as Exhibit A, be approved and distributed to the Class; and
- A fairness hearing with the District Judge be scheduled for final approval of the settlement.

## I.    BACKGROUND

### A. Relevant Facts

On or about June 17, 2019, Plaintiff Efrat Massre ("Plaintiff"), a resident of Brooklyn, New York, received a letter from Defendant Mullooly, Jeffrey, Rooney & Flynn LLP ("Defendant"), the purpose of which was to collect an alleged debt of $2,063.86 owed to Lenox Hill Hospital.  See ECF No. 10 ¶¶ 7, 18; ECF No. 10-1.  The letter included a validation notice stating that Plaintiff may dispute the validity of the debt within thirty days of receipt of the letter.  See ECF No. 10 ¶ 21; ECF No. 10-1.  The letter also stated the following:

> In the event that you do not dispute the amount shown above and if you feel that you have coverage through an insurance carrier, please complete the below form and return to us.

See ECF No. 10 ¶ 24; ECF No. 10-1.  According to Plaintiff, this language "overshadows" the language that was intended to advise her of the right to dispute the debt within a 30-day period.  See ECF No. 10 ¶¶ 21-31, 48-51.  Specifically, she alleges that the language left her unsure whether she can dispute the debt orally or if she were required to dispute the debt in writing by completing the form.  See id. ¶ 25.  Plaintiff also alleges that this language constituted a deceptive and misleading collection practice in violation of the Fair Debt Collection Practices Act ("FDCA").  See id. ¶¶ 43-47.

### B. Procedural History

Plaintiff timely commenced this action against Defendant.  See generally ECF No. 1.  Plaintiff proposed a class ("Class") consisting of:

> All individuals with addresses in the State of New York to whom Defendant sent an initial collection letter, between August 13, 2018 and August 13, 2019, attempting to collect a consumer debt owed to Lenox Hill Hospital with the language: "In the event that you do not dispute the amount shown above and if you feel that you have coverage through an insurance carrier, please complete the below form and return to us."

See id. ¶ 34.  The complaint alleged two claims on behalf of Plaintiff and the proposed Class: (i) violation of Section 1692e of the FDCPA for using false, deceptive and misleading representations in connection with the collection of a debt; and (ii) violation of Section 1692g of the FDCPA for sending a written notice that contains language overshadowing the mandatory validation notice.  See id. ¶¶ 43-51.  Plaintiff sought actual damages, statutory damages, costs and reasonable attorneys' fees.  See id. ¶¶ 47, 51.

Defendant filed a motion requesting a pre-motion conference on Defendant's proposed motion to dismiss the complaint.  See ECF No. 6.  District Judge Matsumoto granted the motion and held a pre-motion conference.  See Dkt. Entry 9/16/19.  Based on the discussions held, the Parties agreed to discuss settlement instead of proceeding with motion practice.  See id.  The Parties were directed to file a joint status report regarding the status of their settlement discussions.  See id.

The Parties filed a stipulation agreeing to permit Plaintiff to file an amended complaint.  See ECF No. 9.  Plaintiff filed her amended complaint that same day.  See ECF No. 10.  In the amended complaint, Plaintiff narrowed her proposed class to:

> **All individuals with addresses in Kings County, New York** to whom Defendant sent an initial collection letter, between August 13, 2018 and August 13, 2019, attempting to collect a consumer debt owed to Lenox Hill Hospital with the language: "In the event that you do not dispute the amount shown above and if you feel that you have coverage through an insurance carrier, please complete the below form and return to us."

3

See id. ¶ 34 (emphasis added).  The amended complaint asserts the same two claims on behalf of Plaintiff and the proposed class: (i) violation of Section 1692e of the FDCPA for using false, deceptive and misleading representations in connection with the collection of a debt; and (ii) violation of Section 1692g of the FDCPA for sending a written notice that contains language overshadowing the mandatory validation notice.  See id. ¶¶ 43-51.  Plaintiff continues to seek actual damages, statutory damages, costs and reasonable attorneys' fees.  See id. ¶¶ 47, 51.

The Parties reported that they reached a settlement in principal for the narrowed proposed class defined in Plaintiff's amended complaint.  See ECF No. 11 at 1.  After conducting limited discovery regarding Defendant's net worth, the number of class members, and the uniformity of the class, see ECF Nos. 11-13, the Parties filed the joint motion for preliminary settlement approval presently before this Court.  See ECF No. 14.

This Court held a telephonic conference with counsel and reviewed the Settlement Agreement and proposed class notice in detail.  See Dkt. Status Report Order 7/21/20.  This Court expressed concerns relating to, inter alia, the scope of the definition of the proposed class, the amount of the service award to Plaintiff, the amount of attorneys' fees and costs to be sought by Plaintiff, and the clarity of information contained in the proposed class notice.  See id.  This Court directed the Parties to file, on or before August 4, 2020, revised versions of the Settlement Agreement and proposed class notice and supplemental briefing on issues raised by the Court.  See id.  Counsel requested an extension to August 11, 2020, which was granted.  See ECF No. 15; Dkt. Order 8/5/2020.  On August 11, 2020, Plaintiff filed supplemental briefing in support of the motion, a revised copy of the proposed class notice, and a red-lined copy of a revised Settlement Agreement.  See ECF No. 16.

### C. Settlement Agreement

The proposed settlement provides for a fund of $8,215.00 (the "Settlement Fund") to cover a county-wide class defined as:

> All persons with an address in Kings County, New York to whom Defendant sent an initial collection letter between August 13, 2018 and August 13, 2019 to collect a debt allegedly owed to Lenox Hill Hospital and "all medical providers who may be associated with Lenox Hill" containing the language: "In the event that you do not dispute the amount shown above and if you feel that you have coverage through an insurance carrier, please complete the below form and return to us."

(the "Class").[1] See ECF No. 16-2 ¶¶ 11, 13, 14(a). According to the Defendant, there are 1,294 members of the Class. See id. ¶ 12. The Settlement Fund is to be distributed pro rata among the Class members via check, except for those who exclude themselves or cannot be located. See id. ¶¶ 14(a). The Settlement Agreement contemplates that the checks issued to Class members will be void 90 days from the date of issuance. See id. For any portion of the Settlement Fund that is not distributed, the Settlement Agreement contains a provision for a cy pres award to be given to a charitable organization to be approved by the Court[2]; there will be no reversion to Defendant. See id. ¶ 15.

---

[1] The definition of the Class proposed by the Parties in the Settlement Agreement has been modified for clarity. See ECF No. 16-2 ¶ 11 (defining the Class as "All persons to whom MJRF sent an initial collection letter to an address in Kings County, New York August 13, 2018 to August 13, 2019, where such letter was sent to collect a debt allegedly owed to Lenox Hill Hospital and all medical providers who may be associated with Lenox Hill (collectively, 'Lenox') containing the following language 'In the event that you do not dispute the amount shown above and if you feel that you have coverage through an insurance carrier, please complete the below form and return to us.'")

[2] Plaintiff proposes that the cy pres award be donated to Legal Services of New York, to be expressly earmarked for the benefit of New York consumers, and Defendant proposes that the cy pres award be donated to St. Jude Hospital. See id. ¶ 15. Based on Plaintiff's submission, it appears that the Parties are still negotiating which organization will be the cy pres recipient. See id. ¶ 15, "Commented [AM1]". As noted below, if, by the close of the objection period, the parties do not inform the Court that they have agreed on a cy pres recipient, this Court

The Parties propose the following with regard to notice of the proposed settlement to the Class: (i) within 45 days of an Order preliminarily approving the Settlement, the Class Administrator will send the written Notice (attached as Exhibit 1 to the Settlement Agreement) to the Class members, along with a request for forwarding address; (2) the Notice will be sent by first class mail with a forward address requested; (3) if the Notice is returned as undeliverable and a forwarding address is provided, within four days of receipt, the Class Administrator is to forward the Notice to the forwarding address provided; and (4) the Class Administrator, Defendant and Plaintiff will not be required to skip trace Notices returned as undeliverable.  See id. ¶ 23.  The Parties further propose that the Class members have 60 days after mailing of the Notice to exclude themselves or object to the proposed settlement.  See id. ¶ 17.

In addition to the amounts to be provided to the Class members, the Settlement Agreement provides for a service award to Plaintiff in the amount of $1,500.00.  See id. ¶ 14(b). The Settlement Agreement contemplates that Defendant will pay Plaintiff's reasonable attorneys' fees and costs through the completion of this matter, but in an amount not to exceed $15,000.00 plus costs from initiation through final approval of the settlement.  See id. ¶ 16.  Plaintiff's counsel is to seek Court approval of such attorneys' fees and costs.  See id.  The Settlement Agreement further contemplates that Defendant will pay the Class Administrator for the costs and expenses necessary to administer and facilitate the settlement, including for printing and mailing the Notice and for issuing and mailing checks to the Class members.  See id. ¶ 22.  The Parties represent that the service award to Plaintiff, payment of costs and expenses to the Class

---

respectfully recommends that any cy pres amount be divided equally between the two organizations as identified.

Administrator, or the attorneys' fees and costs to Plaintiff's counsel will not be deducted from the amount for the Settlement Fund.  See id. ¶¶ 16, 22.

In the event the Court approves the Settlement Agreement and Defendant fulfills its obligations, the Parties agreed that: (1) Plaintiff[3] will release Defendant[4] from all claims, known or unknown, which she has or ever had against Defendant from any claim that could have been brought under the FDCPA relating to or arising from matters that occurred from the beginning of time up through the date the Settlement Agreement becomes effective; and (2) the Class members who do not opt out will release Defendant from any 15 U.S.C. §§ 1692e and 1692g claims arising out of Defendant's collection letters that are at issue in this action.  See id. ¶¶ 20(a), (b).  The Parties state that the releases do not include any claims or defendants that Plaintiff and the Class members may have with respect to the underlying debts that Defendant was attempting to collect. See id. ¶ 20(c).

The Settlement Agreement contemplates that Plaintiff will be selected as the representative of the settlement Class and Plaintiff's counsel will be selected as Class Counsel. See id. ¶¶ 9, 25.  The Parties request the appointment of First Class, Inc. at 5410 W. Roosevelt Road, Suite 222, Chicago, IL 60644-1479 as the Class Administrator.  See id. ¶¶ 14(a), 19.

---

[3] Plaintiff is the "releasor," along with her respective agents, representatives, attorneys, heirs, assigns, or any other person acting on her behalf or for her benefit, and any person claiming through her.  See id. ¶ 20(a).

[4] Defendant is the "released party," along with its parent corporations, subsidiaries, insurers, officers, directors, agents, employees, members, general partners, limited partners, or assigns, and Lenox Hill Hospital.  See id. ¶ 20(a).

## II.     DISCUSSION

### A.  The Fair Debt Collection Practices Act

The FDCPA regulates the collection of consumer debts, defined in the Act as debts incurred by "any natural person . . . primarily for personal, family, or household purposes."  15 U.S.C. §§ 1692a(3), (5).  The statute prohibits the use of "any false, deceptive, or misleading representation or means in connection with the collection of any [consumer] debt."  15 U.S.C. § 1692e.  Section 1692e contains examples of prohibited activities which constitute false, misleading, or deceptive practices, including "[t]he use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer." 15 U.S.C. § 1692e(10).

Section 1692g of the FDCPA requires a debt collector soliciting payment to send the consumer a detailed validation notice within five days of the initial communication, unless the notice is included in the initial communication.  See 15 U.S.C. § 1692g(a).  The written validation notice must contain the following elements:

(1) the amount of the debt;

(2) the name of the creditor to whom the debt is owed;

(3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;

(4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and

(5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

15 U.S.C. § 1692g(a)(1)-(5).  "The right to dispute a debt is the most fundamental of those such forth in Section 1692g(a)[.]"  Hooks v. Forman, Holt, Eliades & Ravin, LLC, 717 F.3d 282, 286 (2d Cir. 2013).  The Second Circuit has held Section 1692g(a)(3) does not impose a writing requirement and, thus, a consumer may dispute the validity of the debt orally.  See id. at 286-87.

Failure to include the requisite information in the validation notice has been held to constitute a violation of the FDCPA.  See DeSantis v. Computer Credit, Inc., 269 F.3d 159, 161 (2d Cir. 2001) ("A debt collector violates the [FDCPA] if it fails to convey the information required by the [FDCPA].").  "Even if a debt collector conveys the required information, the collector nonetheless violates [Section 1692g] if it conveys that information in a confusing or contradictory fashion so as to cloud the required message with uncertainty."  Id.; see Russell v. Equifax A.R.S., 74 F.3d 30, 34 (2d Cir. 1996) ("When a notice contains language that 'overshadows or contradicts' other language informing a consumer of her rights, it violates the Act.").  A collection notice is deceptive and misleading when it can be reasonably read to have more than one interpretation, at least one of which is inaccurate.  See Avila v. Riexinger & Assocs., Inc., 817 F.3d 72, 75-76 (2d Cir. 2016) (finding that collection notice is misleading under Section 1692e where a reasonable consumer could reasonably read it to have multiple meanings); Russell, 74 F.3d at 35 ("Because the initial collection notice in the instant case was reasonably susceptible to an inaccurate reading, it was also deceptive within the meaning of the Act.").  Thus, a notice must convey the required information "clearly and effectively."  Desantis, 269 F.3d 161 (citation omitted).

In determining whether a debt collector violates the FDCPA, courts in the Second Circuit apply an objective standard derived from the perspective of the "least sophisticated consumer." Bryan v. Credit Control, LLC, 954 F.3d 576, 582 (2d Cir. 2020).  A person without the

"astuteness of a 'Philadelphia lawyer' or even the sophistication of the average, everyday, common consumer" should be able to understand the language of the notice he or she receives. Russell, 74 F.3d at 34; see Taylor v. Fin. Recovery Servs., Inc., 886 F.3d 212, 214 (2d Cir. 2018). The Second Circuit has observed, however, "that in crafting a norm that protects the naïve and the credulous[,] the courts have carefully preserved the concept of reasonableness . . . even the least sophisticated consumer can be presumed to possess a rudimentary amount of information about the world and a willingness to read a collection notice with some care." Greco v. Trauner, Cohen & Thomas, L.L.P., 412 F.3d 360, 363 (2d Cir. 2005) (citations & internal quotation marks omitted). The least sophisticated consumer standard is meant to "protect the naïve from abusive practices while simultaneously shielding debt collectors from liability for bizarre or idiosyncratic interpretations of debt collection letters." Id. (citations & internal quotation marks omitted).

An individual who can establish a violation of the FDCPA may recover statutory damages in an amount not to exceed $1,000.00, plus any actual damages sustained. See 15 U.S.C. §§ 1692k(a)(1), (a)(2)(A). Recovery in class actions is limited to actual damages plus statutory damages in an amount not to exceed $1,000.00 for each named plaintiff, and to the lesser of $500,000.00 or one percent of the net worth of the defendant debt collector for the other class members. See 15 U.S.C. §§ 1692k(a)(1), (a)(2)(B). In a successful action to enforce the FDCPA, the court is to award costs of the action together with reasonable attorneys' fees. See 15 U.S.C. § 1692k(a)(3).

**B. Rule 23 Motion**

The Parties jointly move pursuant to Federal Rule of Civil Procedure 23 for certification, for purposes of settlement only, of the Class of: All persons with an address in Kings County,

New York to whom Defendant sent an initial collection letter between August 13, 2018 and August 13, 2019 to collect a debt allegedly owed to Lenox Hill Hospital and "all medical providers who may be associated with Lenox Hill" containing the language: "In the event that you do not dispute the amount shown above and if you feel that you have coverage through an insurance carrier, please complete the below form and return to us."  ECF No. 16-2 ¶ 11.

In determining whether to certify a putative class, courts must determine (i) whether the class meets the Rule 23(a) requirements of numerosity, commonality, typicality and adequacy; and if so, (ii) whether the class satisfies one of the three subdivisions of Rule 23(b).  See Fed. R. Civ. P. 23(a), 23(b); Brown v. Kelly, 609 F.3d 467, 476 (2d Cir. 2010) ("Not only must each of the requirements set forth in Rule 23(a) be met, but certification of the class must also be deemed appropriate under one of the three subdivisions of Rule 23(b).").  Pursuant to Rule 23(c)(1), "the court can make a conditional determination of whether an action should be maintained as a class action, subject to final approval at a later date." Omar v. 1 Front St. Grimaldi, Inc., No. 16 Civ. 5824 (LDH) (CLP), 2019 WL 1322614, at *7 (Jan. 8. 2019) (citation omitted), R&R adopted, Dkt. Order (E.D.N.Y. Mar. 13, 2019).

"Rule 23 does not set forth a mere pleading standard."  Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 350 (2011), but see K.A. v. City of New York, 413 F. Supp. 3d 282, 301 (S.D.N.Y. 2019) ("When deciding a motion to certify a class, the allegations in the complaint are accepted as true.").  "A party seeking class certification must affirmatively demonstrate his compliance with the Rule—that is, he must be prepared to prove that there are in fact sufficiently numerous parties, common questions of law or fact, etc." Wal-Mart Stores, Inc., 564 U.S. at 350 (emphasis in original); see Myers v. Hertz Corp., 624 F.3d 537, 547 (2d Cir. 2010) ("The party seeking class certification bears the burden of establishing by a preponderance of the evidence

that each of Rule 23's requirements has been met.").  "[S]ometimes it may be necessary for the court to probe behind the pleadings before coming to rest on the certification question, and [ ] certification is proper only if the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied." Wal-Mart Stores, 564 U.S. at 350-51 (citations & internal quotation marks omitted).  "Frequently that 'rigorous analysis' will entail some overlap with the merits of the plaintiff's underlying claim." Id.  Failure to prove any requirement of Rule 23 precludes certification.  See Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 622-26 (1997) (affirming decertification of class where proposed class failed to satisfy requirements of common issue predominance and adequacy of representation).  That is, "the district judge must receive enough evidence, by affidavits, documents, or testimony, to be satisfied that each Rule 23 requirement has been met." In re Initial Pub. Offerings Sec. Litig., 471 F.3d 24, 41 (2d Cir. 2006).

Because Plaintiff meet the requirements of Rules 23(a) and 23(b), as set forth below, this Court respectfully recommends granting the motion for certification, for purposes of settlement and subject to approval at a final fairness hearing, of the Class consisting of:

> All persons with an address in Kings County, New York to whom Defendant sent an initial collection letter between August 13, 2018 and August 13, 2019 to collect a debt allegedly owed to Lenox Hill Hospital and "all medical providers who may be associated with Lenox Hill" containing the language: "In the event that you do not dispute the amount shown above and if you feel that you have coverage through an insurance carrier, please complete the below form and return to us."

### 1. The Requirements Of Rule 23(a)

Rule 23(a) governs class certifications, providing:

One or more members of a class may sue or be sued as representative parties on behalf of all members only if: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the

claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a)(1)-(4); <u>Shahriar v. Smith & Wollensky Rest. Grp., Inc.</u>, 659 F.3d 234, 251 (2d Cir. 2011) (setting forth the Rule 23(a) requirements to be satisfied for class certification); <u>Atakhanova v. Home Family Care, Inc.</u>, No. 16 Civ. 6707 (KAM) (RML), 2020 WL 4207437, at *2 (E.D.N.Y. July 22, 2020) (same).  As set forth below, the Court finds that the Plaintiff has met the Rule 23(a) requirements.

### a. Numerosity

The proposed Class is so numerous that joinder is impracticable.  The Second Circuit has noted that "numerosity is presumed at a level of 40 members."  <u>Consol. Rail Corp. v. Town of Hyde Park</u>, 47 F.3d 473, 483 (2d Cir. 1995).  Here, the Parties do not dispute that the proposed Class includes 1,294 individuals.  <u>See</u> ECF No. 14-1 at 4; ECF No. 16-2 ¶ 12.  Individual adjudications of 1,294 claims would be "unnecessarily expensive and time-consuming, and enormously burdensome on the courts," and 1,294 individuals joined together in the same proceeding would be unfeasible.  <u>Consol. Rail Corp.</u>, 47 F.3d at 483 (finding that numerosity is satisfied where individual adjudications of claims would be expensive, time-consuming and burdensome); <u>see</u> <u>Shariar</u>, 659 F.3d at 252 (finding that class including 275 members satisfies numerosity requirement); <u>In re Drexel Burnham Lambert Grp., Inc.</u>, 960 F.2d 285, 290 (2d Cir. 1992) (holding that Rule 23(a)(1) was satisfied where joinder of nearly 850 claimants would be impracticable and "logically unfeasible"); <u>Bondi v. New Rochelle Hotel Assocs.</u>, No. 17 Civ. 5681 (KMK) (LMS), 2018 WL 7246962, at *14 (Dec. 7, 2018) (finding that the numerosity requirement was satisfied where proposed class included 29 bartenders and 103 food service workers), <u>R&R adopted</u>, 2019 WL 464821 (S.D.N.Y. Feb. 6, 2019); <u>Khalid v. DJ Shirley 1 Inc.</u>, No. 15 Civ. 5926 (SJF) (GRB), 2018 WL 9963873, at *5 (E.D.N.Y. June 26, 2018) (finding that

the numerosity requirement was satisfied with 185 putative class members).  Therefore, the numerosity requirement of Rule 23(a)(1) has been met.

### b.  Commonality

There are questions of law and fact common to the proposed Class.  "The standard for meeting the Rule 23(a)(2) prerequisite is qualitative rather than quantitative—that is, there need only be a single issue common to all members of the class."  Savino v. Computer Credit, Inc., 173 F.R.D. 346, 352 (E.D.N.Y. 1997), aff'd, 164 F.3d 81 (2d Cir. 1998) (citing Port Auth. Police Benevolent Ass'n v. Port Auth. of N.Y. & N.J., 698 F.2d 150, 153–54 (2d Cir.1983)).  "[W]here FDCPA plaintiffs have received similar debt collection letters from the defendants' mailing [], courts have found common questions of law or fact sufficient to certify the class."  Id. at 352 (finding commonality where class members were sent similar collection letters containing language that violated FDCPA).   Here, according to Plaintiff, the proposed Class consists of individuals who received the same or similar debt collection letters from Defendant.  See ECF No. 14-1 at 5.  Several questions are common to each member of the proposed Class, including whether the language contained in the letters sent by Defendant was subject to more than one interpretation and whether a least sophisticated consumer could understand the letter.  See id. Therefore, the commonality requirement of Rule 23(a)(2) has been met.

### c.  Typicality

Plaintiff's claims against Defendant are typical of the claims of the proposed Class. Typicality under Rule 23(a)(3) is satisfied when "each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability."  Brown, 609 F.3d at 475 (citation omitted).  "When it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought

to be represented, the typicality requirement is usually met irrespective of minor variations in the fact patterns underlying individual claims." <u>Robidoux v. Celani</u>, 987 F.2d 931, 936-37 (2d Cir. 1993). Plaintiff satisfies her burden here. Plaintiff alleges that she and the members of the proposed Class each received same or similar collection letters from Defendant that contained the same confusing language: "In the event that you do not dispute the amount shown above and if you feel that you have coverage through an insurance carrier, please complete the below form and return to us." <u>See</u> ECF No. 10 ¶¶ 20-26, 34. According to Plaintiff, this language is confusing and overshadows consumers' validation rights because the letter "instructs consumers that a dispute related to insurance coverage must be made in writing." <u>See</u> ECF No. 16 at 1. Because Plaintiff and the Class share an interest in establishing Defendant's liability for violation of the FDCPA based on the same or similar collection letters, the typicality requirement of Rule 23(a)(3) has been met.

### d. Adequacy Of Representation

Plaintiff and her counsel, Ari Marcus, Esq. and Yitzchak Zelman, Esq. of Marcus & Zelman, LLC, will fairly and adequately protect the interests of the Class. To determine if the requirement of Rule 23(a)(4) is met, courts must inquire into whether "1) plaintiff's interests are antagonistic to the interest of other members of the class and 2) plaintiff's attorneys are qualified, experienced and able to conduct the litigation." <u>Cordes & Co. Fin. Servs. v. A.G. Edwards & Sons</u>, 502 F.3d 91, 99 (2d Cir. 2007) (internal quotation marks omitted). "This process 'serves to uncover conflicts of interest between named parties and the class they seek to represent.'" <u>Id.</u> (quoting <u>Amchem</u>, 521 U.S. at 625).

Here, Plaintiff represents that she does not have interests which are antagonistic to the members of the proposed Class. <u>See</u> ECF Nos 10 ¶ 39; 14-1 at 6. Defendant does not challenge

the adequacy of Plaintiff as Class Representative.  See generally ECF No. 14 (joint motion for

conditional class certification and preliminary settlement approval).  Based on this Court's

review of the record, there are no identifiable actual or potential conflicts between Plaintiff and

the other members of the proposed Class members.[5]  All proposed Class members allegedly

suffered the same harm arising from debt collection letters sent by Defendant: confusion

regarding their rights to verify the validity of the alleged debts owed.  See ECF No. 10 ¶¶ 34, 37;

ECF No. 14-1 at 7.  The relief sought by Plaintiff on behalf of the proposed Class members is the

full extent of damages allowed under the FDCPA pursuant to Section 1692k(a).  See ECF No. 10

¶¶ 47; ECF No. 51; 15 U.S.C. § 1692k(a)(2)(B) (limiting recovery to the lesser of $500,000.00

or one percent of the net worth of the defendant debt collector for the other class members).

Plaintiff's request for service award does not take away from the Class recovery.  See ECF No.

16-2 ¶¶ 14(a)-(b).  These facts establish Plaintiff's adequacy to represent the proposed Class.

Ari Marcus and Yitzchak Zelman of Marcus & Zelman, LLC are qualified, experienced,

and able to conduct this litigation on behalf of the proposed Class.  Mr. Marcus is a member of

the New Jersey bar, and has experience handling complex litigation, focused his practice on

plaintiff-side consumer protection law, and has acted as plaintiff's counsel in cases involving

FDCPA claims. See ECF No. 14-6 ¶¶ 1, 11.  Indeed, Mr. Marcus has been appointed as class

counsel in 15 FDCPA-related class actions.  See id.  Mr. Zelman is a member of the New Jersey

and New York bars, has experience handling complex litigation, has focused his practice on

consumer protection law, has represented plaintiffs in over 75 FDCPA-related cases, and has

---

[5] "[I]f [] for some reason it is later determined by the court that the representative Plaintiffs are inadequate, the court could substitute another class plaintiff for the representative plaintiff in question[.]"  Shahriar, 659 F.3d at 253.

been appointed class counsel in more than 20 FDCPA-related class actions.  See ECF No. 14-7 ¶¶ 6(a)-(d).  These facts establish that counsel will adequately represent the Class.

Based on the foregoing, the adequacy requirement of Rule 23(a)(4) has been met.

### 2.  The Requirements Of Rule 23(b)

In addition to satisfying the prerequisites of Rule 23(a), Plaintiff must also satisfy one of the three subdivisions of Rule 23(b): (1) that separate actions pose a risk of inconsistent adjudications or would substantially impair the ability of other individuals to protect their interests; (2) injunctive or declaratory relief is sought concerning the class as a whole; or (3) common questions or law or fact predominate over individual questions, and a class action is superior to other methods for bringing suit.  See Fed. R. Civ. P. 23(b); Ayzelman v. Statewide Credit Servs. Corp., 238 F.R.D. 358, 362-63 (E.D.N.Y. 2006).  Here, Plaintiff seeks to certify the Class under subsection (b)(3).  This rule's predominance and superiority requirements "ensure [] that the class will be certified only when it would 'achieve economies of time, effort, and expense, and promote . . . uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results.'"  Cordes, 502 F.3d at 104 (quoting Amchem, 521 U.S. at 615).

Here, certifying the proposed Class would achieve such economies of time, effort, and expense and would also ensure uniformity of decision as to 1,294 individuals.  Thus, this Court finds that Plaintiff meets the requirements of Rule 23(b)(3).

### a.  Common Questions Predominate Over Individual Issues

The predominance test is met here because the questions of law or fact common to the proposed Class members predominate over questions affecting only individual members.  "The predominance inquiry 'asks whether the common, aggregation-enabling, issues in the case are

more prevalent or important than the non-common, aggregation-defeating, individual issues.'"

Tyson Foods, Inc. v. Bouaphakeo, 136 S. Ct. 1036, 1045 (2016) (citation omitted). "An

individual question is one where 'members of a proposed class will need to present evidence that

varies from member to member,' while a common question is one where 'the same evidence will

suffice for each member to make a prima facie showing or the issue is susceptible to generalized,

class-wide proof.'" Id. (citation omitted). "Predominance is a test readily met in certain cases

alleging consumer [] fraud[.]" Amchem, 521 U.S. at 625.

The most significant question raised by Plaintiff's claim against Defendant is whether the

language contained in Defendant's written debt collection notice can be reasonably read to have

more than one interpretation, at least one of which is inaccurate, such that the notice is deceptive

or misleading in violation of the FDCPA. See Avila, 817 F.3d at 75-76 (finding that collection

notice is misleading under Section 1692e where a reasonable consumer could reasonably read it

to have multiple meanings). This question is common to all proposed Class members who

allegedly received, from Defendant, written debt collection notices containing the same language

and predominates over any individualized questions, such as the amount of actual damages

suffered by each member. See, e.g., Brown, 609 F.3d at 484-86 (finding that district court did

not abuse its discretion in concluding that common issues predominated over individualized

issues); Cordes, 502 F.3d at 107 ("Even if the district court concludes that the issue of injury-in-

fact presents individual questions, however, it does not necessarily follow that they predominate

over common ones and that class action treatment is therefore unwarranted."); In re Visa

Check/MasterMoney Antitrust Litig., 280 F.3d 124, 139 (2d Cir. 2001) ("Common issues may

predominate when liability can be determined on a class-wide basis, even when there are some

individualized damage issues."), abrogated on other grounds, In re Initial Pub. Offerings, 471

F.3d 24.  Further, the effect that Defendant's letter would have on the "least sophisticated consumer" is a question that may be resolved as a matter of law by the court.  See, e.g., Schweizer v. Trans Union Corp., 136 F.3d 233, 237-38 (2d Cir. 1998) ("[C]ourts have increasingly treated as questions of law various judgments about the way in which the least sophisticated consumer would interpret particular debt collection claims[.]" (citation & internal quotation marks omitted); Nicholson v. Forster & Garbus LLP, No. 11 Civ. 524 (SJF) (WDW), 2013 WL 2237554, at *3 n.6 (E.D.N.Y. May 17, 2013), aff'd, 570 F. App'x 40 (2d Cir. 2014) ("Whether a communication by a debt collector is misleading to the least sophisticated consumer is an objective question that may be determined by the Court as a matter of law.").  Thus, the predominance test is met here.

**b.  Class Action As A Superior Method of Resolution**

In this case, proceeding as a class action is superior to the alternative method of 1,294 individual actions or a joinder of 1,294 individuals.  Whether a class action is superior to other available methods for fairly and efficiently adjudicating the controversy is an "explicitly comparative" inquiry, requiring the court to consider alternatives to class settlement.  In re Petrobras Sec., 862 F.3d 250, 268 (2d Cir. 2017).  Courts are instructed to consider four nonexclusive factors in determining whether the class action is a superior device, including: (1) the class members' interests in litigating individually in separate actions; (2) the extent and nature of any related litigation already commenced by class members; (3) the desirability of concentrating litigation of the claims in a particular forum; and (4) the manageability of the litigation as a class action.  See Fed. R. Civ. P. 23(b)(3).

Here, the size of the proposed Class is large.  Individual litigation of 1,294 claimants comes with the risk of inconsistent adjudications.[6]  It would be in the interest of judicial economy to litigate issues of fact and law common to the 1,294 claimants, especially the predominant question regarding the reasonable reading of Defendant's notice, in one forum.  Further, individual members of the proposed Class may have a small recovery relative to the expense and burden of individual litigation, which may dissuade them from pursuing litigation against Defendant on any valid FDCPA claims.  These factors suggest that class members' interests are served by a class action.  Thus, this Court finds that a class action is the superior method of resolving this case.

## C.  Preliminary Approval Of The Class Settlement

Having respectfully recommended that the proposed Class should be conditionally certified for purposes of settlement, this Court next turns to whether the Parties' proposed settlement should be preliminary approved pursuant to Rule 23(e).  "Public policy favors settlement."  In re Sony Corp. SXRD, 448 F. App'x 85, 87 (2d Cir. 2011).  To grant preliminary approval of settlement, the court must determine that the proposed settlement is "fair, adequate, and reasonable, and not a product of collusion."  Id. at 86 (citing Joel A. v. Giuliani, 218 F.3d 132, 138 (2d Cir. 2000)).  The court is to determine "a settlement's fairness by examining the negotiating process leading up to the settlement as well as the settlement's substantive terms."  D'Amato v. Deutsche Bank, 236 F.3d 78, 85 (2d Cir. 2001).  That is, the court must examine the procedural and substantive fairness of the proposed settlement.  See id. (reviewing district court's determination of procedural and substantive fairness of settlement agreement).

---

[6] It is unknown at this point whether any of the 1,294 members of the proposed Class, other than Plaintiff, have instituted litigation against Defendant arising from the written collection notice sent to collect a debt allegedly owed to Lenox Hill Hospital and associated medical providers.

"[W]hen a settlement is negotiated prior to class certification[], it is subject to a higher degree of scrutiny in assessing its fairness." D'Amato, 236 F.3d at 85; Weinberger v. Kendrick, 698 F.2d 61, 73 (2d Cir. 1982) (holding that parties must make "a clearer showing of a settlement's fairness, reasonableness and adequacy and the propriety of the negotiations leading to it in such cases than where a class has been certified and class representatives have been recognized at an earlier date"). As reasoned by the Second Circuit, the higher degree of scrutiny is "necessary in order to meet the concerns regarding the possibilities of collusion or of undue pressure by the defendants on would-be class representatives." Weinberger, 698 F.2d at 73.

"Under recent amendments to Rule 23, when weighing a grant of preliminary approval of a class settlement, district courts must now determine whether 'giving notice is justified by the parties' showing that the court will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal.'" In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig., No. 05 MDL 1720 (MKB) (JO), 2019 WL 6875472, at *15 (E.D.N.Y. Dec. 16, 2019) (alteration in original) (quoting Fed. R. Civ. P. 23(e)(1)(B)(i)-(ii)). This "likelihood" standard is more exacting than the prior "probable cause" standard. Compare Payment Card Interchange Fee, 2019 WL 6875472, at *15, with Lizondro-Garcia v. Kefi LLC, 300 F.R.D. 169-179-180 (S.D.N.Y. 2014) ("To grant preliminary approval, the court need only find that there is 'probable cause to submit the [settlement] to class members and to hold a full-scale hearing as to its fairness.'") (quoting In re Traffic Exec. Ass'n E. R.Rs., 627 F.2d 631, 634 (2d Cir. 1980)). Whether a settlement is fair is a determination within the sound discretion of the court. See Levitt v. Rodgers, 257 F. App'x 450, 453 (2d Cir. 2007).

Based on the Parties' submissions, this Court finds that the proposed settlement is procedurally and substantively fair, passes muster of higher scrutiny, and justifies giving notice.

Therefore, this Court respectfully recommends granting the motion for preliminary approval of the proposed settlement as articulated in the Settlement Agreement.

### 1.  Procedural Fairness

This Court finds that the Parties' proposed settlement in this case is the result of arm's-length negotiations and the class members' interests were represented adequately in the process. In evaluating the procedural fairness of a proposed settlement, the court must determine whether the settlement was "achieved through arms-length negotiations by counsel with the experience and ability to effectively represent the class's interests." Becher v. Long Island Lighting Co., 64 F. Supp. 2d 174, 178 (E.D.N.Y. 1999) (citation omitted); see D'Amato, 237 F.3d at 85 (noting that the district court must "determine[] a settlement's fairness by examining the negotiating process leading up to the settlement as well as the settlement's substantive terms."); Fed. R. Civ. P. 23(e)(2)(A)-(B) (requiring courts to determine procedural fairness of proposed class action settlements by considering whether "the class representatives and class counsel have adequately represented the class" and "the proposal was negotiated at arm's length").  The court has the "fiduciary responsibility of ensuring that the settlement is fair and not a product of collusion, and that the class members' interests were represented adequately." Int'l Union of Electronic, Elec., Salaried, Mach., & Furniture Workers v. Unisys Corp., 858 F. Supp. 1243, 1264 (E.D.N.Y. 1994) (quoting In re Warner Commc'ns Sec. Litig., 798 F.2d 35, 37 (2d Cir. 1986)).

As an initial matter, as discussed in detail above, this Court finds that Plaintiff adequately represented the Class and Plaintiff's counsel is experienced and able to represent the Class interests.  See supra II.B.1.d.

Further, using their experience, Plaintiff's counsel negotiated settlement with Defendant's counsel over a five-month period.  See Dkt. Entry 9/17/19; ECF No. 11; ECF No.

14.  As Plaintiff's counsel describe it, the negotiation process was "robust, and at times contentious[.]"  See ECF No. 14-6 ¶ 7.  During that time, the Parties conducted discovery regarding Defendant's net worth, the number of potential Class members, and the uniformity of the potential Class members' claims.  See ECF No. 11.  Plaintiff served extensive discovery demands on the Defendant, including interrogatories, document demands and requests for admission.  See ECF No. 16 at 2.  This discovery allowed Plaintiff's counsel to determine whether the initial proposed Class was viable in this action.  See id.  Upon discovering that her original proposed Class would have encompassed tens of thousands of individuals, Plaintiff amended her complaint to narrow the scope of the proposed Class and increase the potential monetary recovery of each individual.  See ECF Nos. 9-11; ECF No. 16 at 3.  According to Plaintiff's counsel, settlement was entered into after a thorough evaluation of the strengths and weaknesses of the Parties' respective positions, including the viability of Defendant's defenses as to liability and class certification, and the challenges associated with appeals.  See ECF No. 14-6 ¶¶ 8-10.

Based on these facts, this Court finds no reason to doubt Plaintiff's counsel's representation that "[t]he settlement is the result of extensive arms-length negotiations between the parties."  ECF No. 14-6 ¶ 4.  This Court finds that the process of reaching the proposed settlement in this case was procedurally fair.

### 2.  Substantive Fairness

The Court also finds that the proposed settlement is also substantively fair.  In evaluating the substantive fairness of a proposed settlement, the Second Circuit has enumerated nine factors to guide courts:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of

> discovery completed; (4) the risks of establishing liability; (5) the risks of
> establishing damages; (6) the risks of maintaining the class action through the trial;
> (7) the ability of the defendants to withstand a greater judgment; (8) the range of
> reasonableness of the settlement fund in light of the best possible recovery; and (9)
> the range of reasonableness of the settlement fund to a possible recovery in light of
> all the attendant risks of litigation[.]

City of Detroit v. Grinnell Corp., 495 F.2d 448, 463 (2d Cir. 1974) (internal citations omitted),

abrogated on other grounds, Goldberger v. Integrated Res., Inc., 209 F.3d 43 (2d Cir. 2000).

Rule 23(e)(2)(C) sets forth four factors for evaluating substantive fairness of proposed

settlements that overlap with the Grinnell factors: (i) the costs, risks, and delay of trial and appeal;

(ii) the effectiveness of any proposed method of distributing relief to the class, including the method

of processing class-member claims; (iii) the terms of any proposed award of attorney's fees,

including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3).

See Fed. R. Civ. P. 23(e)(2)(C).  The Court also considers whether the proposal treats class members

equitably relative to each other.  See Fed. R. Civ. P. 23(e)(2)(D).

"Although the Court is not required to make a finding of fairness as to the underlying

settlement at this time, the Grinnell factors are instructive."  Oladipo v. Cargo Airport Servs.

USA, LLC, No. 16 Civ. 6165 (CLP), 2019 WL 2775785, at *8 (E.D.N.Y. July 2, 2019) (using

Grinnell factors to analyze substantive fairness of proposed settlement agreement on motion for

preliminary approval); see Torres v. Gristede's Operating Corp., Nos. 04 Civ. 3316 (PAC), 08

Civ. 8531 (PAC), 08 Civ. 9627 (PAC), 2010 WL 2572937, at *2 (S.D.N.Y. June 1, 2010) (noting

that "[p]reliminary approval of a settlement agreement requires only an initial evaluation of the

fairness of the proposed settlement on the basis of written submissions and an information

presentation by the settling parties.") (citations & internal quotation marks omitted).

Here, the totality of the Grinnell factors weighs in favor of approving the settlement as

fair and reasonable.

### a. Complexity, Expense and Likely Duration Of The Litigation

The first factor weighs in favor of settling this action. Without settlement, this case would require substantial expenditure of money and time by both Parties. This Court notes that this case is in its initial stages. No scheduling order has been issued, and the Parties have not yet begun to conduct any formal discovery, although discovery was exchanged informally. See generally Dkt. With over 1,000 individuals involved in the Class, discovery, motion practice, a possible trial and an appeal in this case are likely to be time-consuming and complex. See In re Austrian & German Bank Holocaust Litig., 80 F. Supp. 2d 164, 174 (S.D.N.Y. 2000) ("Most class actions are inherently complex and settlement avoids the costs, delays and multitude of other problems associated with them."). Further, Defendant continues to deny any liability arising from a FDCPA violation and conditions its consent for class certification on settlement, which creates potential for extensive motion practice if settlement is not approved. See, e.g., ECF No. 14-2 ¶ 7. Defendant's counsel avers that it ultimately would have defeated the claims of the putative class, see ECF No. 16 at 4, and Plaintiff's counsel even admits that Defendant's potential defenses relating to liability and class certification are viable. See ECF No. 14-6 ¶ 9. Even assuming that Plaintiff were successful in defeating any pretrial motions and proving Defendant's liability at trial, there is a real risk that Defendant would continue the litigation through appeal, which would inevitably result in higher costs and produce delay in reaching a resolution. See ECF No. 14-6 ¶ 9; ECF No. 16 at 4.

### b. Reaction Of The Class To Settlement

The second factor is neutral. "This is an issue that can be addressed only after notice of the proposed settlement has been sent to the class and the time for objections has passed."

Ayzelman, 238 F.R.D. at 365.  Here, the notice of settlement has not yet been issued to the Class, and there is no information available at this time regarding the Class's reaction to the Settlement.

### c.  The Stage Of The Proceedings And Amount Of Discovery Completed

The third factor weighs in favor of settlement.  "When counsel has sufficient information to appreciate the merits of the case, settlement is favored."  Moukengeshcaie v. Eltman, Eltman & Cooper, P.C., No. 14 Civ. 7539 (MKB) (CLP), 2019 WL 5204809, at *8 (E.D.N.Y. Oct. 15, 2019).  Here, although the Parties have not yet conducted any formal discovery, Defendant has provided discovery regarding Defendant's net worth, the number of potential Class members, and the uniformity of the potential Class members' claims.  See ECF No. 11.  Plaintiff's counsel represents that, using the information provided by Defendant, they were able to assess the fairness and reasonableness of the proposed settlement in light of the strengths and weaknesses of each Party's position.  See ECF No. 14-6 ¶ 8; 16 at 3 ("[E]ach party [has] obtained enough information to make a reasonable professional judgment as to the merits of the settlement.").

Given that this case is in the early stages, were settlement not approved, the Parties would have to conduct discovery, engage in extensive motion practice, possibly proceed to trial, and risk an appeal.  Plaintiff's counsel acknowledges that there is a serious risk that Defendant may propound its defenses as to liability and class certification through motion practice and the appeal process.  See ECF No. 14-6 ¶ 9; ECF No. 16 at 4.  This carries a risk for Plaintiff and Class members, who may lose any recovery from Defendant.  See id. ¶ 10.

### d.  Establishing Liability And Damages

The fourth and fifth factors also weigh in favor of settlement.  Defendant has not admitted liability and has not conceded that the proposed Class should be certified.  See ECF No. 14-2 ¶ 7.  Defendant has argued that the written debt collection notice at issue is clear and not

subject to the "bizarre and idiosyncratic interpretation" conceived by Plaintiff's counsel instead of Plaintiff. ECF No. 6. Defendant has also intimated that Plaintiff's allegations are "frivolous and sanctionable." Id. In order to succeed, Plaintiff would have to overcome Defendant's defenses. See ECF No. 14-6 ¶¶ 9-10. Here, Plaintiff faces a reasonable and meaningful risk of not succeeding on the merits. See, e.g., Jacobson v. Healthcare Fin. Servs., Inc., 516 F.3d 85, 93 (2d Cir. 2008) (finding that, "[w]hile the letter is [] perhaps ambiguous . . . the validation notice clarifies any possible ambiguity"); McStay v. I.C. Sys., Inc., 308 F.3d 188, 191 (2d Cir. 2002) (holding that "when the letter [] is read in its entirety, it contains no contradiction and creates no reasonable confusion"). Indeed, recent opinions have found, as a matter of law, that validation notices were not undermined by language in the debt collection letter requesting consumers to provide insurance carrier information. See, e.g., Jackson v. Pom Recoveries, Inc., No. 17 Civ. 6118 (AMD) (AKT), 2020 WL 4926259, at *5 (E.D.N.Y. Aug. 21, 2020) (finding that "even the least sophisticated consumer would understand that he could contest the debt instead of providing his insurance information and agreeing to pay the uncovered balance of the debt"); Anela v. AR Res., Inc., No. 17 Civ. 5624 (ABB), 2018 WL 2961813, at *5 (E.D. Pa. June 12, 2018) (holding that language in a collection notice instructing a debtor to call the collection agency if the debtor carried "any insurance that may cover [the] obligation" did not interfere with, overshadow or contradict the validation notice); Cruz v. Fin. Recoveries, No. 17 Civ. 0753 (RMB) (AMD), 2016 WL 3545322, at *4 (D.N.J. June 28, 2016) (requesting insurance information if the debtor believed the insured would cover the debt did not affect "the bold-faced language outlining the debt dispute process"). Thus, as Plaintiff's counsel admits, the likelihood of Plaintiff and the Class succeeding is "uncertain in light of Defendant's steadfast arguments against liability and class certification." ECF No. 16 at 5.

27

Even if Plaintiff were to overcome Defendant's defenses and successfully establish liability, Plaintiff would face difficulties proving her actual damages and her entitlement to up to $1,000.00 in statutory damages. See 15 U.S.C. §§ 1692k(a). "The decision whether to award statutory damages under the FDCPA and the size of the award are matters committed to the sound discretion of the district court." Savino v. Computer Credit, Inc., 164 F.3d 81, 86 (2d Cir. 1998). The amount of statutory damages to be awarded is based on "the frequency and persistence of noncompliance by the debt collector, the number of persons adversely affected, and the extent to which the debt collector's noncompliance was intentional." 15 U.S.C. § 1692k(b)(2). Even if successful, Plaintiff may not be entitled to the maximum statutory penalty of $1,000.00 and the Class may not be entitled to the maximum statutory penalty of one percent of Defendant's net worth, or $8,215.00. See ECF No. 16 at 5-6 (admitting the difficulty of establishing the amount of statutory damages to be awarded under the FDCPA).

### e. Maintaining The Class Through Trial

The sixth factor weighs in favor of settlement. Defendant has not conceded that the proposed Class should be certified. See ECF No. 14-2 ¶ 7; ECF No. 16-2 ¶ 7. Indeed, Defendant only agreed to the certification of the Class for purposes of the settlement. See ECF No. 14-2 ¶ 11; ECF No. 16-2 ¶ 11. Without settlement, it is likely that Defendant will oppose any motion for class certification made by Plaintiff. See ECF No. 16-2 ¶ 7. Plaintiff's counsel acknowledges the possibility that "Plaintiff faces additional risks at class certification stage, including that the Court might not certify the class at all." ECF No. 16 at 5. The class certification process involves risk, additional expense, and delay, all of which the Parties intend to avoid through settlement. See ECF No. 14-2 ¶¶ 3-4.

### f.   Ability Of Defendant To Withstand A Greater Judgment

The seventh factor slightly weighs in favor of settlement.  The Parties do not address in their papers the issue of whether Defendant is able to withstand a greater judgment.  Plaintiff recognizes that any cost towards further litigation of this matter "could have depleted Defendant's resources and adversely impacted its ability to pay any judgment or possible future settlement[.]"  ECF No. 16 at 6.   Even if Defendant could withstand a greater judgment that the settlement provides, this Court agrees with Plaintiff that Defendant's agreement to pay the Settlement Fund, service award, costs of settlement administration, and attorneys' fees and costs eliminates most collection risk.  See Mariani v. OTG Mgmt., Inc., No. 16 Civ. 1751 (CLP), 2018 WL 10468036, at *6 (E.D.N.Y. Sept. 28, 2018) (finding that seventh factor weighs in favor of approval of proposed settlement where the settlement agreement "eliminates the risk of collection").

### g.   Range Of Reasonableness Of Settlement Fund

The eighth and ninth factors strongly weigh in favor of settlement.  Pursuant to the Settlement Agreement, a fund of $8,215.00 is to be established from which the members of the Class who do not opt out would receive a pro rata share.  See ECF No. 14-2 ¶ 14(a).  This amount is equivalent to one percent of the net worth of Defendant, which is also the maximum statutory recovery permitted under the FDCPA for a class settlement.  See id. ¶ 13 ("During discovery, [Defendant] has made certain representations to Class Counsel concerning its net worth and provided its documentation to verify."); 15 U.S.C. § 1692k(a)(2)(B).  Plaintiff concedes that it would have been difficult for the Class to have recovered $8,215.00 had this matter not settled.  See ECF No. 16 at 8.  This Settlement amount is to be paid independent of any other fees or costs to be paid by Defendant.  See id.; 16-2 ¶¶ 16, 22.

If any portion of the Settlement Fund is not distributed, there will be no reversion to Defendant.  See id. ¶ 15.  Instead, the Settlement Agreement provides for a cy pres award to be given to the Legal Services of New York and/or St. Jude Hospital.  See id. ¶ 15.

The Settlement Agreement also provides that Plaintiff would receive an award of $1,500.00 for her services to the Class.  ECF No. 14-2 ¶ 14(b).  Plaintiff could not recover a greater amount at trial.  See 15 U.S.C. § 1692k(a)(1) (noting that debt collector is liable for statutory damages in an amount not to exceed $1,000.00 plus any actual damages sustained by plaintiff); ECF No. 14-3 at 6 ("Plaintiff's complaint does not allege any actual damages.").  At the July 21, 2020 conference, this Court questioned whether Plaintiff was entitled to a service award that is greater than what she would be entitled to under the FDCPA.  In their supplemental briefing, the Plaintiff's counsel argued that the service award was proportionate to the valuable assistance provided by Plaintiff on this case, including submitting to interviews with counsel; providing counsel with documents and information; participating in conferences; and conferring with counsel regarding the parameters of proposed settlements.  See ECF No. 16 at 12.  Plaintiff's counsel also argued that the service award is in line with the amount of service awards approved by other courts in analogous actions.  See id. (citing to cases where plaintiffs were awarded $7,500.00, $4,000.00, and $10,000.00 for their services in consumer-law related actions).  Given this additional information as to Plaintiff's commitment to the case, the service award appears reasonable.

In addition to these amounts, Defendant agrees to pay the costs of administering the settlement upfront and up to $15,000.00 in attorneys' fees and costs.  See ECF No. 14-2 ¶ 22; ECF No. 16-2 ¶ 16.  Although the potential recovery for Plaintiff's counsel is greater than the service award, "there is no requirement that the amount of an award of attorneys' fees be

proportional to the amount of damages." Barrella v. Vill. of Freeport, 43 F. Supp. 3d 136, 192 (E.D.N.Y. 2014), aff'd, 814 F.3d 594 (2d Cir. 2016).

Given that the Settlement Agreement provides for the best-case scenario for Plaintiff and the Class, there is no reason to find the settlement inadequate or unfair. The value of the settlement amount to be paid by Defendant justifies approving the settlement.

### D. Appointment Of The Class Representative

This Court respectfully recommends that Plaintiff, Efrat Massre, should be appointed as representative of the Class. As stated in detail supra, Plaintiff does not have interests which are antagonistic to those of the Class members. See II.B.1.d. This litigation is premised on the same harm suffered by all proposed Class members, and Plaintiff seeks the full extent of damages allowed under the FDCPA on behalf of the proposed Class members. See ECF No. 10 ¶¶ 34, 37, 47; ECF No. 14-1 at 7.

### E. Appointment Of The Class Counsel

This Court respectfully recommends that Plaintiff's counsel, Ari Marcus, Esq. and Yitzchak Zelman, Esq. of Marcus & Zelman, LLC, should be appointed as Class Counsel. In evaluating the adequacy of Class Counsel, Rule 23(g) requires the Court to consider: "(1) the work done by counsel in identifying or investigating potential claims in the action; (2) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (3) counsel's knowledge of the applicable law; and (4) the resources counsel will commit to representing the class." Fed. R. Civ. P. 23(g).

Mr. Marcus and Mr. Zelman performed meaningful work on this case, including interviewing Plaintiff, reviewing documents, conducting legal research, preparing the complaint, and settling the claims on behalf of Plaintiff and the Class, See ECF No. 14-6 ¶¶ 4-6; ECF No.

14-7 ¶¶ 5(a)-(d).  Plaintiff's counsel also have extensive experience handling complex litigation and litigating consumer-related cases, including cases involving FDCPA.  See ECF No. 14-6 ¶ 11; ECF No. 14-7 ¶¶ 6(a)-(d).  They are well-versed in the applicable law.  See ECF No. 14-6 ¶ 11; ECF No. 14-7 ¶ 7.1.  Plaintiff's counsel affirm that they "will continue to be committed to having sufficient resources to represent [the] class."  ECF No. 14-7 ¶ 8.1.  Accordingly, the proposed Class Counsel satisfy the criteria of Rule 23(g).

## F.  Adequacy Of Notice

This Court respectfully recommends approving the proposed notice, as amended by this Court, and the proposed method of notification to Class members as adequate to protect the Class interests.  Pursuant to the Federal Rules of Civil Procedure, the "court must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1).  In a Rule 23(b)(3) class action, such as here, "the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."  Id. 23(c)(2)(B).  See Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 173-76 (1974) (holding individual notice to identifiable class members is an "unambiguous requirement of Rule 23").  The notice may be made by "United States mail, electronic means, or other appropriate means."  Fed. R. Civ. P. 23(c)(2)(B).

The notice must include, "clearly and precisely [] in easily understood language," the following:

> (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

Id.  It must also "fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings." Vargas v. Capital One Fin. Advisors, 559 F. App'x 22, 27 (2d Cir. 2014) (citing Wal-Mart Stores, Inc. v. Visa U.S.A. Inc., 396 F.3d 96, 114 (2d Cir. 2005)).

Here, the proposed notice of the settlement to the Class sets forth the following information: (1) a brief background of this lawsuit, including the claims and defenses; (2) the purpose of the notice; (3) a definition of who falls into the Class and the number of Class members; (4) an explanation of who may recover under the Class settlement; (5) the amount of the Settlement Fund and the method of allocating the Settlement Fund; (6) an overview of the attorneys' fees and the award that will be paid to the class representative; (7) instructions on how to remain in the settlement or request exclusion from the settlement; (8) the time and manner for requesting exclusion; (9) identification of Class Counsel; (10) options for a Class member to enter an appearance individually or through a separate attorney; (11) instructions on how to object to the settlement; (12) information regarding the final approval hearing; (13) the effect if the Court approves or does not approve the settlement; and (14) contact information should the Class member have additional questions.  See generally ECF No. 14-3.  Such information, as amended by this Court, is provided in clear and unambiguous language that the least sophisticated consumer is likely to understand.  See id.

The Settlement Agreement provides that the Class Administrator will mail, via first class with forwarding address requested, the proposed notice to each individual member of the Class using the last known address utilized by Defendant in sending its debt collection notice.  See ECF No. 14-2 ¶ 3.  Each notice would be sent with a request for forwarding address.  See id.  In

the event the notice is returned as undeliverable and a forwarding address is provided, the Class

Administrator will attempt to re-mail the notice to the Class members.  See id.

This Court finds that the revised proposed notice, with the Court's amendments, is

sufficiently detailed, and that it fairly and adequately advises Class members of their rights and

obligations, and the method of notice is practical and likely effective in reaching the Class

members.  This Court respectfully recommends approving the proposed notice in the form as

amended by this Court and attached to this report and recommendation as Exhibit A.

## III.    CONCLUSION

For the foregoing reasons, this Court respectfully recommends that the Parties' joint

motion be granted as follows:

- The Class be conditionally certified for settlement purposes;
- The Settlement Agreement be preliminarily approved;
- Ari Marcus, Esq. and Yitzchak Zelman, Esq. of Marcus & Zelman, LLC, be appointed as Class Counsel;
- Plaintiff Efrat Massre be appointed as the representative of the settlement Class;
- The proposed notice, in the form as amended by this Court and attached hereto as Exhibit A, be approved and distributed to the Class; and
- A fairness hearing with the District Judge be scheduled for final approval of the settlement.

## IV.    OBJECTIONS

A copy of this report and recommendation is being provided to counsel via ECF.  Any

written objections to this report and recommendation must be filed with the Clerk of the Court

within fourteen (14) days of service of this report.  See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P.

6(a), 72(b).  Any requests for an extension of time for filing objections must be directed to the

District Judge assigned to this action prior to the expiration of the fourteen (14) day period for

filing objections.  Failure to file objections within fourteen (14) days will preclude further review

of this report and recommendation either by the District Court or the Court of Appeals.

34

See Thomas v. Arn, 474 U.S. 140, 145 (1985) ("[A] party shall file objections with the district court or else waive right to appeal."); Caidor v. Onondaga Cnty., 517 F.3d 601, 604 (2d Cir. 2008) ("[F]ailure to object timely to a magistrate [judge]'s report operates as a waiver of any further judicial review of the magistrate [judge]'s decision.").

Given that the Parties have jointly moved for approval and consented to this settlement process, they may wish to waive their right to object to this report and recommendation.  If so, they may do so in writing by submission to the District Judge.

Dated: Brooklyn, New York
       August 28, 2020

_____*Vera M. Scanlon*_____
VERA M. SCANLON
United States Magistrate Judge